

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**MONIQUE CHANDLER,**

    **Plaintiff,**

v.                                                Civil Action No. 3:16cv309

**NC FINANCIAL SOLUTIONS OF UTAH, LLC,**
d/b/a NetCredit,
and
**NC FINANCIAL SOLUTIONS, LLC,**

    **Defendants.**

## COMPLAINT

## INTRODUCTION

1. This is an action by a consumer for violations of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§1961 et seq., and various laws of the Commonwealth of Virginia. The Defendants have worked as part of an enterprise to charge the Plaintiff interest at far more than five times the allowable rate of interest for credit that is void under the laws of the Commonwealth. Plaintiff brings this action to recover statutory damages and actual damages, and to obtain a declaration that the outstanding loan from the Defendants is void and unenforceable. Plaintiff also seeks injunctive relief and an award of attorneys' fees and costs.

## JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and the RICO, 18 U.S.C. §1965, and has supplemental jurisdiction of the state law claims regarding the same transaction and events under 28 U.S.C. § 1367(a).

## PARTIES

3. The Plaintiff is a resident in the area covered by the Eastern District of Virginia.

4. The Defendant NC Financial Solutions of Utah, LLC ("NetCredit") is a foreign limited liability company formed in Delaware with its place of business in Chicago, Illinois, and registered to do business in Virginia, and has Capitol Corporate Services, Inc., 10 S. Jefferson Street, Suite 1400, Roanoke, Virginia, 24011 as its registered agent.

5. The Defendant NC Financial Solutions, LLC is a foreign limited liability corporation doing business in Virginia without having a registered agent in Virginia, and claims to be the sole member of Defendant NetCredit.

## STATEMENT OF FACTS

6. In April 2015, facing financial pressure to meet her monthly living expenses and to assist her family, Plaintiff needed money and began interacting with Defendants through the internet.

7. To obtain money, Plaintiff agreed to accept $2,120.00 of credit from NetCredit on April 27, 2015.

8. She obtained that credit from her home in Virginia by using her computer.

9. Attached as Exhibit A are the true and correct terms of the contract for this credit, titled "Consumer Installment Loan Agreement" ("credit contract").

10. The credit contract was signed by the President of NC Financial Solutions, LLC, as sole member of NetCredit on April 28, 2015.

11. As shown on Exhibit A, NetCredit charged over 149% interest on this loan.

12. Through automated transfers, Defendants received payments from Plaintiff of $127.75 every two weeks on this loan through August 28, 2015:

13. These payments totaled $1,149.75.

14. In addition to the payments it took, Defendants have repeatedly tried to obtain funds electronically from Plaintiff's bank account, and in doing so have caused Plaintiff to incur at least twenty-four bank fees of $29.00 each, for at least $696.00 in fees.

15. Defendants claim that they are still owed over $3,000.00.

16. Because the credit contract was executed online at the Plaintiff's home, the place of contracting was the Plaintiff's residence.

17. Performance of the credit contract was accomplished when funds from the Defendant were deposited into her Virginia bank account at Plaintiff's bank, and she accessed these funds in Virginia through her normal Virginia banking activities.

18. Because the funds were made available to her in Virginia, the performance of the credit contract took place in Virginia.

19. The credit contract was for the personal use of Plaintiff and was a consumer transaction under both state and federal law.

20. As the entity that signed the credit contract, NC Financial Solutions, LLC is doing business in Virginia as a consumer finance company as defined in Va. Code § 6.2-1500.

21. NC Financial Solutions, LLC has not been issued a license under Va. Code § 6.2-1501(A) to act as a consumer finance company in Virginia.

22. As the entity that is named in the credit contract, NetCredit is doing business in Virginia as a consumer finance company as defined in Va. Code § 6.2-1500.

23. NetCredit has not been issued a license under Va. Code § 6.2-1501(A) to act as a consumer finance company in Virginia.

24. Exhibits A states that NetCredit is licensed by the Utah Department of Financial Institutions.

25. NetCredit has not been issued a license by the Utah Department of Financial Institutions.

26. The Utah Department of Financial Institutions does not license any non-bank lender like NetCredit to extend consumer credit in Virginia.

27. Utah law does not authorize a non-bank lender like NetCredit to extend consumer credit in Virginia.

28. The Utah Department of Financial Institutions conducts no regulatory oversight over Defendants' actions that are initiated outside of Utah and performed in Virginia.

29. Utah has not licensed either of the Defendants to make loans in Virginia.

30. Utah has no substantial relationship with the transaction between Plaintiff and Defendants, and no reasonable basis exists for Defendants to claim those transactions are subject to Utah law.

31. The Defendants work together in an enterprise to make loans to individual consumers for personal, family, household or other non-business purposes at extremely high rates of interest.

32. The Defendants are charging Plaintiff far more than twice the allowable interest rate because they were acting as a consumer finance company in Virginia and were not allowed to

charge more than 12% interest without first obtaining a license under Virginia Consumer Finance Act.

33. Because the only allowable interest rate that could have been charged by Defendants was 12%, Defendants were charging more than five times the legally allowed rate.

## FIRST CAUSE OF ACTION
## VIRGINIA CONSUMER FINANCE ACT

34. The Plaintiff re-alleges and incorporates herein by reference all matters set forth in paragraphs 1-33 above.

35. Unless exempt from its provisions, the Virginia Consumer Finance Act prohibits any person from engaging in the business of making loans in any principal amounts to individuals for personal, family, household or other non-business purposes, and charging, contracting for, or receiving directly or indirectly, any interest, charges, compensation, consideration or expense which in the aggregate are greater than the rate otherwise permitted by Va. Code § 6.2-303, unless otherwise exempt, or without having first obtained a consumer finance license from the Virginia State Corporation Commission (SCC). Va. Code § 6.2-1501.

36. Pursuant to Va. Code § 6.2-303, the contract rate of interest permitted on credit is 12% per year unless a higher rate of interest is authorized by some other section of the Code of Virginia.

37. Neither of the Defendants has ever held a consumer finance license issued by the Virginia SCC.

38. Neither of the Defendants is subject to any statutory exemption from having a consumer finance license.

39. Although Defendants presented the credit contract as regulated by Utah law under a license issued by the Utah Department of Financial Institutions, they are not licensed by that entity, and that entity does not authorize out-of-state entities to extend credit in Virginia.

40. Because no substantial relationship exists between the transaction and Utah and no reasonable basis exists for Defendants to claim the transaction is subject to Utah law, the transaction is not subject to Utah law.

41. Because application of the law of Utah would be contrary to the fundamental policy of the Commonwealth to protect its citizens from predatory lending, and because Virginia has a greater interest in the transaction than Utah, the transaction is not subject to Utah law.

42. Because Defendants attempt to claim the protection of Utah law as part of a fraud on the law, Utah law should not be applied to the transaction.

43. A lender who takes any action to make or collect on any loan which is in violation of Va. Code § 6.2-1501 shall not collect, receive, or retain any principal, interest, or charges whatsoever with respect to the loan and any principal or interest paid on the loan shall be recoverable by the person by or for whom payment was made. Va. Code § 6.2-1541.

44. Therefore, the Defendants' credit contract with Plaintiff is void and the Defendants are forbidden from collecting any payments, in any manner, from Plaintiff.

45. Plaintiff has paid to the Defendants a total of $1,149.75 on this credit and she is allowed to recover this amount.

## SECOND CAUSE OF ACTION
## VIRGINIA USURY

46. The Plaintiff re-alleges and incorporates herein by reference all matters set forth in paragraphs 1-33 above.

47. Pursuant to Va. Code § 6.2-303, the contract rate of interest permitted on credit is 12% per year unless a higher rate of interest is authorized by some other section of the Code of Virginia.

48. Although Defendants presented the credit contract as regulated by Utah law under a license issued by the Utah Department of Financial Institutions, they are not licensed by that entity, and that entity does not authorize out-of-state entities to extend credit in Virginia.

49. Because no substantial relationship exists between the transaction and Utah and no reasonable basis exists for Defendants to claim the transaction is subject to Utah law, the transaction is not subject to Utah law.

50. Because application of the law of Utah would be contrary to the fundamental policy of the Commonwealth to protect its citizens from predatory lending, and because Virginia has a greater interest in the transaction than Utah, the transaction is not subject to Utah law.

51. Because Defendants attempt to claim the protection of Utah law as part of a fraud on the law, Utah law should not be applied to the transaction.

52. Defendants claimed to charge interest far in excess of 12% without meeting any exemption, the credit contract was in violation of Va. Code § 6.2-303.

53. Plaintiff made payments subject to this usurious interest rate.

54. Under Va. Code § 6.2-305(A), Plaintiff is entitled to recover as statutory damages the total amount of interest paid to Defendants in excess of 12%, plus twice the total amount of interest paid.

## THIRD CAUSE OF ACTION
## THE VIRGINIA CONSUMER PROTECTION ACT

55. The Plaintiff re-alleges and incorporates herein by reference all matters set forth in paragraphs 1-33 above.

56. The Defendants are suppliers regulated by the VCPA, as that term is defined at Va. Code § 59.1-198.

57. Although Defendants presented the credit contract as regulated by Utah law under a license issued by the Utah Department of Financial Institutions, they are not licensed by that entity, and that entity does not authorize nonbanks to extend credit in Virginia.

58. Because no substantial relationship exists between the transaction and Utah and no reasonable basis exists for Defendants to claim the transaction is subject to Utah law, the transaction is not subject to Utah law.

59. Because application of the law of Utah would be contrary to the fundamental policy of the Commonwealth to protect its citizens from predatory lending, and because Virginia has a greater interest in the transaction than Utah, the transaction is not subject to Utah law.

60. Because Defendants attempt to claim the protection of Utah law as part of a fraud on the law, Utah law should not be applied to the transactions.

61. Plaintiff entered into a consumer transaction with Defendants regulated by the Virginia Consumer Protection Act.

62. In the transaction, Defendants violated Va. Code § 59.1-200(A)(2) and (14) by claiming that NetCredit was licensed by the Utah Department of Financial Institutions when it has not been issued a license by that Department.

63. In the transaction, Defendants violated Va. Code § 59.1-200(A)(4) and (14) by claiming that the credit transaction was regulated by Utah law even though the extension of credit was not made to or from Utah, but was a loan made in Virginia to a Virginia resident by Delaware companies operating out of Chicago, Illinois.

64. In the transaction, Defendants violated Va. Code § 59.1-200(A)(14) by extending credit in Virginia for more than 12% interest without first obtaining a consumer finance license.

65. Plaintiff suffered a loss as a result of Defendants' violations of the VCPA.

66. The violations were willful, or in the alternative were negligent and not the result of a bona fide error.

## FOURTH CAUSE OF ACTION
## FEDERAL RICO

67. Plaintiff re-alleges and incorporates herein by reference all matters set forth in paragraphs 1-33 above.

68. Plaintiff was injured in her property by reason of Defendants' violations of 18 U.S.C. § 1962(c).

69. The Defendants associated with an enterprise engaged in interstate commerce.

70. The Defendants conducted or participated, directly or indirectly, in the conduct of that enterprise's affairs through the collection of an unlawful debt.

71. The debt being collected was unlawful because the rate of interest greatly exceeded twice the allowable rate.

72. The Defendants conducted or participated, directly or indirectly, in the conduct of that enterprise's affairs through the racketeering activity of wire fraud through a scheme to defraud by use of the internet.

73. The enterprise is a web of legally distinct corporations as persons, including each of the Defendants and others, that are associated together for a common purpose of collecting unlawful debts.

74. These entities work together as part of a legally distinct enterprise called Enova International, Inc.

75. As part of the enterprise, the Defendants work together to establish credit contracts with consumers at far more than twice the allowable interest rate.

76. As part of the enterprise, the Defendants work together to establish credit contracts with consumers through the internet by falsely representing that NetCredit is licensed by the Utah Department of Financial Institutions.

77. As part of the enterprise, the Defendants work together to establish credit contracts with consumers through the internet by falsely representing that the transaction is covered by Utah law.

78. The enterprise manages and supervises the affairs of the Defendants.

79. Defendants' actions in violation of RICO were a proximate cause of the Plaintiff's injury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court:

1. Declare that credit contracts are null and void;

2. Permanently enjoin the Defendants from any attempt to collect any moneys from the Plaintiff in connection with either credit contract;

3. Order the Defendants to disgorge to the Plaintiff the payment of $1,149.75 of payments;

4. Award treble the damages under 18 U.S.C. § 1964(b) in the amount of $3,449.25;

5. Award at minimum $500.00 for each violation of the VCPA;

6. Award treble the damages under Va. Code § 59.1-204(A) of $3,449.25 or at minimum $1,000.00 for each violation of the VCPA;

7. Award the sum of twice the total interest paid plus the total interest paid in excess of 12% under Va. Code § 6.2-305(A).

8. Reasonable attorneys' fees under the federal RICO, the VCPA, and Virginia usury law, and costs; and

9. Order such other and further relief as may be deemed proper and just.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
MONIQUE CHANDLER
By Counsel

By: Dale W. Pittman, VSB#15673
THE LAW OFFICE OF DALE W. PITTMAN
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803-3212
(804) 861-6000
(804) 861-3368 (FAX)
dale@pittmanlawoffice.com

Thomas D. Domonoske, VSB #35434
461 Lee Avenue
Harrisonburg, VA 22802
(540) 442-7706
tomdomonoske@earthlink.net

Counsel for Plaintiff